

# NUMBER 13-16-00681-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**LUIS ENRIQUE SANCHEZ,** **Appellant,**

**v.**

**THE STATE OF TEXAS,** **Appellee.**

---

### On appeal from the 398th District Court of Hidalgo County, Texas.

---

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Hinojosa and Tijerina**
**Memorandum Opinion by Justice Tijerina**

A jury convicted appellant Luis Enrique Sanchez of one count of aggravated sexual assault of a child, a first-degree felony, and two counts of indecency with a child by contact, second-degree felonies. *See* TEX. PENAL CODE ANN. §§ 21.11, 22.011. Sanchez received concurrent sentences of fifteen years' imprisonment for each indecency with a child by contact offense and forty-five years' imprisonment for the aggravated sexual

assault of a child offense. By six issues, which we have reorganized and renumbered, Sanchez contends: (1) the evidence is insufficient (issue one); (2) the trial court improperly admitted his custodial statement to police, evidence of his extraneous offenses, and testimony of numerous outcry witnesses (issues two, three, and four); (3) he was denied his right to due process and a fair trial because crucial evidence was destroyed (issue five); and (4) cumulative errors warrant reversal (issue six). We affirm.

## I. SUFFICIENCY OF THE EVIDENCE

By his first issue, Sanchez contends that the evidence is insufficient to support his convictions. Specifically, Sanchez argues that "the outcry statements, court testimony, and interviews . . . were so inconsistent, and so contradictory, that it's impossible for any reasonable person to believe that [Sanchez] sexually assaulted [the child, A.D.V.[1]]," and "It is not possible for any rational jury to have convicted [him] based on [A.D.V.'s] shabby and contradictory testimony and lack of physical evidence." Sanchez complains that A.D.V.'s "testimony was too unreliable and contradictory, and also [that] she stated that she lied about it and it never really happened."[2]

## A. Standard of Review & Applicable Law

In determining the sufficiency of the evidence, we consider all the evidence in the light most favorable to the verdict and determine whether a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt based on the evidence and reasonable inferences from that evidence. *Whatley v. State*, 445 S.W.3d 159, 166 (Tex. Crim. App. 2014); *Brooks v. State*, 323 S.W.3d 893, 898–99 (Tex. Crim.

---

[1] We use initials to protect the identity of complainants in sexual assault cases. *See Salazar v. State*, 562 S.W.3d 61, 63 n.1 (Tex. App.—Corpus Christi–Edinburg 2018, no pet.).

[2] Sanchez does not specify which elements or which offenses he asserts lacked sufficient evidence.

2

App. 2010). The fact finder is the exclusive judge of the facts, the credibility of witnesses, and the weight to be given their testimony. *Brooks*, 323 S.W.3d at 899. We resolve any evidentiary inconsistencies in favor of the judgment. *Id.*

Sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009); *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). "Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Villarreal*, 286 S.W.3d at 327; *see Malik*, 953 S.W.2d at 240.

As charged in this case, a person commits the offense of aggravated sexual assault of a child if that person either intentionally or knowingly penetrates the sexual organ of a child under the age of fourteen by any means. *See* TEX. PENAL CODE ANN. § 22.011. As charged here, a person commits the offense of indecency with a child by contact if the person engages in sexual contact with a child younger than seventeen years of age or causes the child to engage in sexual contact with the person. *See id*. § 21.11(a)(1). As charged here, "sexual contact" means the touching of any part of the anus of a child and the causing of the child to touch any part of the genitals of the person "if committed with the intent to arouse or gratify the sexual desire of any person." *See id*. § 21.11(c)(1).

**B. The Evidence**

A.D.V., a twelve-year old child, testified that she lived with her mother in Weslaco

when Sanchez "touched" her.[3] A.D.V. stated that when she was nine, Sanchez first "did something to" her while her mother was making something to eat for her. A.D.V. explained that Sanchez touched her front "part" with his "part." When the State asked her to identify what part of her body Sanchez touched, A.D.V. put an "X" on the vagina of a drawing of a girl. When the State asked her to circle the part of the body Sanchez used to touch her, A.D.V. circled the penis on a drawing of a boy. A.D.V. said that the girl's part and boy's part she identified are used for sex. A.D.V. clarified that Sanchez touched the "inside" of her vagina with his penis. A.D.V. said that Sanchez kissed her, and it felt "ugly." A.D.V. stated that Sanchez only touched her front with his front on this occasion.

A.D.V. testified that she and her mother went to Mexico to visit Sanchez, and they all stayed together in a hotel room. According to A.D.V., while her mother was asleep, Sanchez touched her part with his part. A.D.V. again identified the vagina and penis on the drawings as the parts she meant. A.D.V. stated that she told Sanchez she wanted to tell her mother what he had done, but Sanchez said, "Do not tell your mom anything."

On re-direct examination by the State, A.D.V. testified that Sanchez put his "part" in her "part in the back." A.D.V. did not recall where this occurred. A.D.V. stated that at her mother's house, she touched Sanchez's penis with her hand, she moved her hand, and then "[a] white thing came out," of Sanchez's penis, which he cleaned with a blanket.

A.D.V. testified that prior to the incidents with Sanchez, her brother, "Cabezon,"[4] also touched her the way Sanchez touched her. Specifically, A.D.V. stated that Cabezon

---

[3] A.D.V. stated that the boy who touched her was Kique; she identified Sanchez as Kique, and for ease of reading, although several witnesses refer to him as Kique during their testimony, we will refer to him as Sanchez.

[4] Cabezon is a nickname, and A.D.V. did not know the actual name of her brother, who was a minor at the time. However, A.D.V.'s mother stated Cabezon's name, which we will not reference.

4

touched her vagina and her anus with his penis.

Aimee Nicanor, an investigator with Child Protective Services, testified that she interviewed A.D.V. about the allegations. Nicanor stated that A.D.V. told her that when they were at her home in Weslaco, Sanchez "touched her butt over her clothing, . . . touched her front part when he took off her clothing with his hand," put his "pito into her buttocks, her culo, and . . . that he did the same to her front and back private part." According to Nicanor, when A.D.V. referred to Sanchez's pito she meant the male sexual organ. Nicanor agreed with the State that A.D.V. claimed that Sanchez put his penis inside her vagina.

Nicanor testified that subsequently, when A.D.V. was removed from her mother, A.D.V. was crying, wanted to go with her mother, and told her that Sanchez had not touched her, that "she is the one that touched him, and . . . that it was all a lie." Nicanor stated that A.D.V. had acquired the sexually transmitted diseases trichomonas and chlamydia. Nicanor said Cabezon and A.D.V.'s mother also tested positive for chlamydia.

## C.    Analysis

A.D.V. testified that when she was nine years old living in Weslaco, Sanchez penetrated her vagina with his penis and A.D.V. masturbated Sanchez until he ejaculated. *See* TEX. PENAL CODE ANN. §§ 21.11 (setting out elements of indecency with a child by contact), 22.011 (setting out elements of aggravated sexual assault of a child); *Gonzalez Soto v. State*, 267 S.W.3d 327, 332 (Tex. App.—Corpus Christi–Edinburg 2008, no pet.) ("The testimony of a child sexual abuse victim alone is sufficient to support a conviction for indecency with a child or aggravated sexual assault."). A.D.V. also stated that Sanchez put his penis in her anus. Nicanor testified that A.D.V. reported that Sanchez

5

put his "pito into her buttocks, her culo" and "did the same to her front and back private part" at her house in Weslaco. *See* TEX. PENAL CODE ANN. § 21.11.

Viewing the evidence in the light most favorable to the verdict, we conclude the evidence supports the jury's findings that Sanchez penetrated A.D.V.'s vagina with his penis, caused A.D.V. to touch his penis with her hand, and used his penis to touch A.D.V.'s anus in Weslaco.[5] *See Whatley*, 445 S.W.3d at 166; *Brooks*, 323 S.W.3d at 898–99; *see also* TEX. PENAL CODE ANN. §§ 21.11, 22.011. Accordingly, we conclude that a rational fact finder could have found the essential elements of indecency with a child by contact in counts one and three and aggravated sexual assault of a child in count two beyond a reasonable doubt based on the evidence and reasonable inferences from that evidence. *See Whatley*, 445 S.W.3d at 166–67; *Brooks*, 323 S.W.3d at 898–99; *Gonzalez Soto*, 267 S.W.3d at 332. We overrule Sanchez's first issue.[6]

## II.   ADMISSION OF STATEMENT

By his second issue, Sanchez contends that his Fifth and Sixth amendment rights were violated when the trial court denied his motion to suppress because he did not knowingly and intelligently waive his right to counsel prior to giving a written statement.

---

[5] The jury charge gave the jury the option of convicting Sanchez of either aggravated sexual assault of a child or the lesser-included offense of indecency with a child by contact for the allegation that Sanchez penetrated A.D.V.'s anus with his penis. *See* TEX. PENAL CODE ANN. §§ 21.11 (indecency with a child), 22.021 (aggravated sexual assault). For that allegation, the jury found Sanchez guilty of indecency with a child by touching A.D.V.'s anus by any means. *See id.* § 21.11.

[6] Sanchez also contends that the evidence is factually insufficient to support the judgment. However, under *Brooks v. State*, courts of appeals may no longer apply a separate factual sufficiency review. 323 S.W.3d 893, 898–99 (Tex. Crim. App. 2010) (plurality op.). We must apply the standard of review as set out by the Texas Court of Criminal Appeals in *Brooks*, and if the evidence is insufficient, we render an acquittal. *See id.* Thus, Sanchez's factual sufficiency contention is no longer viable under *Brooks* and our Court's precedent. *See id.*; *Black v. State*, 551 S.W.3d 819, 828 (Tex. App.—Corpus Christi–Edinburg 2018, no pet.); *Matamoros v. State*, 500 S.W.3d 58, 62 (Tex. App.—Corpus Christi–Edinburg 2016, no pet.) (declining to perform a factual sufficiency review because we are required to follow binding precedent). Accordingly, we decline to address it.

Specifically, Sanchez argues the arraigning magistrate failed to ask him if he wanted an attorney, and the written Spanish *Miranda* warnings provided to him "were lacking crucial wording"; thus, he could not have waived his right to counsel prior to the interrogation and his statement was not given "knowingly and intelligently."

## A.    Pertinent Facts

Sanchez filed a motion to suppress a statement he gave to Steve Moyar, an investigator with the Hidalgo County Sheriff's Office.  In his motion to suppress, Sanchez argued that his written statement was taken:  (1) in violation of article 38.21 of the Texas Code of Criminal Procedure, the Due Process Clause of the Fifth and Fourteenth Amendments of the United States Constitution, and the Due Course of Law provision of article I, §§ 13 and 19 of the Texas Constitution and "not made voluntarily or without compulsion or persuasion"; (2) in violation of article 38.22 § 2 of the Texas Code of Criminal Procedure, the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution, and article I, § 10 of the Texas Constitution because it does "not show on [its] face that the proper admonitions were given"; (3) in violation of the Fourth and Fourteenth Amendments of the United States Constitution, article I, § 9 of the Texas Constitution, article 38.23, and chapter 14 of the Texas Code of Criminal Procedure because it was the "fruit" of an illegal seizure; (4) "in violation of his right to counsel, guaranteed by the Fifth, Sixth[,] and Fourteenth Amendments to the United States Constitution[,] and Article I, § 10 of the Texas Constitution"; and (5) "after he had invoked his rights to counsel and silence, and before [he] initiated further conversation with the police, in violation of the Fifth, Sixth[,] and Fourteenth Amendments to the United States Constitution, and Article I, § 10 of the Texas Constitution."

7

At the motion to suppress hearing, the State asked Sanchez to clarify the basis of his motion to suppress. The trial court said, "And the basis is because it was not made voluntary? Is that what you're saying." Sanchez's trial counsel responded, "Correct, Your Honor, not within compliance of the statute in violation of my client's *Miranda* rights, in violation of my client's rights under the Code of Criminal Procedure, as well as State and Federal law, Your Honor."

The State called Investigator Moyar, and he testified that after Sanchez was arrested, he took Sanchez to be arraigned by the magistrate. Investigator Moyar said that he read the *Miranda* warnings to Sanchez in Spanish, Sanchez waived his *Miranda* rights, and Sanchez provided a written statement in Spanish. Investigator Moyar stated that Sanchez did not provide any statements prior to being *Mirandized*. According to Investigator Moyar, Sanchez "basically denied having any sexual contact with" A.D.V., and he was "blaming the brother, that he had something to do with—with the sexual assault, but it was explained to him that [A.D.V.] was not accusing her brother. She was accusing him." Investigator Moyar stated, "He denied having any relationship, a romantic relationship with [A.D.V.'s] mother. He denied having any sexual relationship with her mother." Investigator Moyar got the impression that Sanchez thought that A.D.V.'s "mother was the one who reported this because he kept on telling me that—that [A.D.V.'s] mother would threaten him several times that she was going to call the police and report him, that he did something to her daughter if he didn't continue hanging around with her. . . ." Investigator Moyar said that after reading his statement, Sanchez signed it.

On cross-examination by Sanchez's trial counsel, Investigator Moyar stated that he was present when the magistrate read the *Miranda* warnings to Sanchez in Spanish.

8

Investigator Moyar acknowledged that there was no audio or video recording made of the interview. Investigator Moyar explained that he read the warnings to Sanchez in Spanish and provided a copy of the warnings in Spanish for Sanchez to read. Investigator Moyar said that Sanchez initialed each warning. Investigator Moyar agreed with Sanchez's trial counsel that the Spanish version of the *Miranda* warnings translated to "nothing more" than "you have a right to remain silent" and that it was "missing the part, saying, not make any statement at all, and any statement I make may be used against me at my trial." In addition, Investigator Moyar agreed that the third *Miranda* warning in Spanish "talks about, basically, you have a right to a lawyer . . . *while* you are questioned, not prior to being questioned" and "that's not the same warning that we give in the English language, to have a lawyer present to advise me prior to and during questioning" (emphasis added). Investigator Moyar also agreed that the fourth *Miranda* warning in Spanish is different than the warning provided in English because the English version states that the accused has a right to have a lawyer appointed to advise him prior to and during questioning while the Spanish version only referred to the right to a court-appointed lawyer. Finally, Investigator Moyar agreed that the fifth warning in Spanish failed to state that Sanchez could terminate the interview. Investigator Moyar agreed that Sanchez read and relied on the Spanish version of the *Miranda* warnings, but Investigator Moyar clarified that he had orally translated the English version to Spanish and the magistrate judge had read the warnings to Sanchez in Spanish. Investigator Moyar stated that he wrote down the statement in Spanish, read it to Sanchez, and then provided the written statement to Sanchez to read and sign, which he did.

Sanchez requested to review "the magistrate's warning sheet" due to concerns

9

that perhaps he had invoked his right to counsel when he appeared before the magistrate judge. The trial court recessed the hearing.

When the hearing was resumed, Sanchez informed the trial court he had been provided a copy of the magistrate's warning sheet, and he continued his cross-examination of Investigator Moyar. Investigator Moyar stated that he was present when the magistrate read the *Miranda* warnings to Sanchez, and the magistrate did not "specifically" ask Sanchez if he wanted a lawyer and Sanchez did not request a lawyer at that time. Sanchez's trial counsel showed Investigator Moyar the magistrate's warning sheet and asked if it indicated that Sanchez had requested an attorney. Investigator Moyar said, "No, sir."

On redirect examination by the State, Investigator Moyar testified that Sanchez's statement was written in Spanish and that Sanchez signed the document. Investigator Moyar explained that after he wrote the statement, Sanchez reviewed and signed it. Sanchez provided a statement denying the allegations.

The State and Sanchez rested, and the trial court asked, "And the whole purpose of this motion to suppress was for the voluntariness of the statement?" Sanchez replied, "Correct, Your Honor." The trial court denied the motion to suppress.

## B. Standard of Review and Applicable Law

To pass constitutional muster, law enforcement officers must provide *Miranda* warnings to a defendant prior to a custodial interrogation. *Herrera v. State*, 241 S.W.3d 520, 525 (Tex. Crim. App. 2007) (citing *Miranda v. Arizona*, 384 U.S. 436, 442–57, 467–79 (1966)). "Custodial interrogation" is "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action

10

in any significant way." *Id.* Texas law requires the "*Miranda* warnings to be contained on the face of any written statement made by a defendant during custodial interrogation." *Brown v. State*, 960 S.W.2d 265, 270 (Tex. App.—Corpus Christi–Edinburg 1997, no pet.). This rule applies whether the statement is inculpatory or exculpatory. *Id*. (citing TEX. CODE CRIM. PROC. ANN. art. 38.22).

We review a trial court's ruling on a motion to suppress under a bifurcated standard. *Delafuente v. State*, 414 S.W.3d 173, 177 (Tex. Crim. App. 2013). We "must give almost total deference to a trial judge's findings of historical fact and credibility determinations that are supported by the record, but review questions of law de novo." *Id*. We review the trial court's application of the law to the facts de novo, and we will uphold the trial court's ruling if it is correct under any theory of law applicable to the case and supported by the record. *Elizondo v. State*, 382 S.W.3d 389, 393–94 (Tex. Crim. App. 2012).

## C.    Analysis

As set out above, Sanchez's motion to suppress contained generalized allegations that his statement (1) was not made voluntarily, without compulsion or persuasion, (2) did not show on its face that that the proper admonitions were given, (3) was the result of an illegal seizure, (4) violated his right to counsel, and (5) taken after he invoked his right to counsel and right to remain silent. Sanchez generally cited provisions of the United States Constitution, the Texas Constitution, and the Texas Code of Criminal Procedure. Sanchez did not include any substantive argument to support the assertions in his motion to suppress. At the motion to suppress hearing, Sanchez agreed with the trial court that

11

the whole purpose of the hearing was to determine the voluntariness of his statement.

On appeal, Sanchez first argues that the trial court should have granted his motion to suppress because the magistrate failed to ask him if he wanted an attorney and the Spanish version of the *Miranda* warnings read to him by Investigator Moyar "were lacking crucial wording." To present a claim for appellate review, the party must have stated the specific grounds for his objection to the trial court. TEX. R. APP. P. 33.1. Sanchez did not make these arguments to the trial court. And, the global statements made by Sanchez in his pretrial motion to suppress are not sufficiently specific to preserve the arguments he now makes on appeal. *Swain v. State*, 181 S.W.3d 359, 365 (Tex. Crim. App. 2005) (en banc) (overruling the appellant's issue regarding his written statement because his arguments were "global in nature and contained little more than citations to constitutional and statutory provisions" and at the suppression hearing, the appellant failed to make his appellate complaints). Although an appellant does not waive error if the grounds of the objection are obvious to the court or the opposing counsel, here, the only ground made obvious at the suppression hearing was that Sanchez's statement was not voluntary, and it is not apparent from the context of Sanchez's motion to suppress that he argued that his rights were violated because the magistrate failed to ask him if he wanted an attorney and the Spanish version of the *Miranda* warnings read to him by Investigator Moyar "were lacking crucial wording." *See id*.

Nonetheless, even assuming error in the admission of the statement, it was harmless because Sanchez's statement was exculpatory. *See Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002) (explaining that when evidence is improperly admitted, if after examining the record as a whole the appellate court has a fair assurance that the

12

error did not influence the jury, or had but a slight effect, reversal is inappropriate and stating that the appellate court must assess the likelihood that the jury's decision was adversely affected by the error); *see also Clay v. State*, 240 S.W.3d 895, 905–06 (Tex. Crim. App. 2007) (providing that "erroneously admitted evidence established little, if anything, negative about appellant that was not also well established by the properly admitted evidence"; therefore, it was not harmful).  Moreover, the evidence contained in his statement was admitted at trial elsewhere, without objection.  *See Lane v. State*, 151 S.W.3d 188, 193 (Tex. Crim. App. 2004) (stating that error in the admission of evidence is cured where the same evidence comes in elsewhere without objection); *Reckart v. State*, 323 S.W.3d 588, 596 (Tex. App.—Corpus Christi–Edinburg 2010, pet. ref'd) ("[O]verruling an objection to evidence will not result in reversal when other such evidence was received without objection, either before or after the complained-of ruling." (citing *Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998); *Moore v. State*, 999 S.W.2d 385, 402 (Tex. Crim. App. 1999) ("The admission of the same evidence from another source, without objection, waives previously stated objections."))).  We overrule Sanchez's second issue.

### III.    RULE 404(B) VIOLATION

By his third issue, Sanchez contends that the trial court improperly admitted numerous and extremely prejudicial extraneous bad acts.  Specifically, Sanchez argues that pursuant to Texas Rule of Evidence 404(b), the trial court should have excluded the following:   (1) A.D.V.'s sister's (S.M.) testimony that "she had sexual relations with [Sanchez] when she was 15 years old"; (2) the testimony of Marisol Nieto, A.D.V.'s special education teacher, that Sanchez sold marihuana; (3) A.D.V.'s testimony that Sanchez

13

sexually assaulted her in Mexico; and (4) Investigator Moyar's testimony that Sanchez "crossed the border illegally."

## A. Standard of Review

We review the trial court's decision to admit evidence under an abuse of discretion standard. *Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011); *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). We will not find an abuse of discretion unless the trial court's decision lies outside the zone of reasonable disagreement. *Tillman*, 354 S.W.3d at 435.

## B. S.M.'s Testimony

First, Sanchez argues that S.M.'s testimony that he put his penis inside her vagina when she was fifteen years old was inadmissible pursuant to rule 404(b). *See* TEX. R. EVID. 404(b). The State argues that the extraneous offense evidence was admissible pursuant to article 38.37. *See* TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2(b).

"Rule 404(b) is a rule of inclusion rather than exclusion—it excludes only evidence that is offered solely for proving bad character and conduct in conformity with that bad character." *Dabney v. State*, 492 S.W.3d 309, 317 (Tex. Crim. App. 2016). Under Rule 404(b), "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." TEX. R. EVID. 404(b)(1). However, article 38.37 of the Texas Code of Criminal Procedure creates an exception to rule 404(b) in cases of indecency with a child by contact and aggravated sexual assault of a child. TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2(a)(C), (E), (b); *see also Guartuche v. State*, No. 13-18-00379-CR, 2019 WL 3820419, at *5 (Tex. App.—Corpus Christi–Edinburg Aug. 15, 2019, no pet. h.) (mem.

14

op., not designated for publication) (citing *Hitt v. State*, 53 S.W.3d 697, 705 (Tex. App.—Austin 2001, pet. ref'd)). Article 38.37, § 2(b) sets out that "[n]otwithstanding Rules 404 and 405, Texas Rules of Evidence," evidence that the defendant committed a separate offense listed in article 38.37 § 1(a)(1) may be admitted at trial for any bearing it has on relevant matters, including the defendant's character and acts performed in conformity with that character. TEX. CODE CRIM. PROC. ANN. art. 38.37, §§ 1(a)(1), 2(a)(1)(D), (b). Article 38.37, § 2(b) supersedes rule 404(b). *Hitt*, 53 S.W.3d at 705; *see Carmichael v. State*, 505 S.W.3d 95, 102 (Tex. App.—San Antonio 2016, pet. ref'd); *see also Guartuche*, 2019 WL 3820419, at *5.

Sanchez does not address whether article 38.37, § 2(b) applies to S.M.'s testimony. Sanchez only argues that the trial court should have excluded S.M.'s testimony pursuant to rule 404(b). However, as set out above, article 38.37, § 2(b) is an exception to and supersedes rule 404(b). *See Hitt*, 53 S.W.3d at 705; *see also Guartuche*, 2019 WL 3820419, at *5. And here, the record shows that the State provided the required article 38.37 notice to Sanchez of its intent to use evidence of Sanchez's past bad act committed against S.M. and that the trial court held a hearing out of the jury's presence to determine whether the evidence would "support a jury finding that [Sanchez] committed the separate offense [against S.M.] beyond a reasonable doubt." *See* TEX. CODE CRIM. PROC. ANN. art. 38.37, §§ 2-a(1), (2), 3. Article 38.37, § 2(b) specifically states that evidence that the defendant committed a separate offense of sexual assault of a child may be admitted for any bearing it has on relevant matters in the trial of an alleged offense of aggravated sexual assault of a child and indecency with a child. *See* TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2(a)(1)(D), (b); *Belcher v. State*, 474 S.W.3d 840, 846 (Tex.

15

App.—Tyler 2015, no pet.) ("Article 38.37 as amended now provides for the admission of evidence of other sex crimes committed by the defendant against children other than the victim of the alleged offense 'for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of defendant.'"); *Hitt*, 53 S.W.3d at 705; *see also Guartuche*, 2019 WL 3820419, at \*5. The record shows that the trial court admitted evidence of Sanchez's separate offense of sexual assault of S.M. when she was fifteen years old pursuant to article 38.37, § 2(b); thus, the evidence was admissible for any bearing, notwithstanding rule 404(b). *See* TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2(b); TEX. PENAL CODE ANN. § 22.011. Accordingly, the trial court did not abuse its discretion by admitting S.M.'s testimony regarding this extraneous offense as it was admissible pursuant to article 38.37, which Sanchez has not challenged on appeal. *See* TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2(a)(1)(D), (b); *Hitt*, 53 S.W.3d at 705; *see also Guartuche*, 2019 WL 3820419, at \*5.

## C. Evidence of Other Bad Acts

Next, Sanchez complains that pursuant to rule 404(b), the trial court should have excluded evidence that he sold marihuana, he sexually assaulted A.D.V. in Mexico, and he "crossed the border illegally." However, a defendant forfeits his right to present his claim on appeal if he fails to make a timely and specific request, objection, or motion to the trial court for a ruling. TEX. R. APP. P. 33.1; *Mendez v. State*, 138 S.W.3d 334, 341–42 (Tex. Crim. App. 2004). And, an appellate court should not address the merits of an issue that has not been properly preserved by a proper objection at trial. *Ford v. State*, 305 S.W.3d 530, 532 (Tex. Crim. App. 2009). Here, Sanchez does not provide citation to the record wherein he objected to this evidence, and upon our review of the record, we

16

observe that Sanchez did not make a 404(b) objection when this evidence was admitted. Therefore, Sanchez did not preserve these complaints for appeal, and we will not address them. *See id.*; *see also* TEX. R. APP. P. 33.1; *Mendez*, 138 S.W.3d at 341–42. We overrule Sanchez's third issue.

## IV.    MULTIPLE OUTCRY WITNESSES

By his fourth issue, Sanchez contends that the trial court should have designated S.M. as the only outcry witness because she was the first person A.D.V. told about the sexual assault. By a sub-issue to his fourth issue, Sanchez contends that the trial court reversibly erred by "allowing numerous State witnesses to testify as outcry witnesses when the only true outcry witness was [S.M.], [A.D.V.'s] 18 year old sister."

## A.    Applicable Law and Standard of Review

The outcry witness must be the first person who is eighteen years or older "to whom the child makes a statement that in some discernible manner described the alleged offense." *Garcia v. State*, 792 S.W.2d 88, 92 (Tex. Crim. App. 1990); *see* TEX. CODE CRIM. PROC. ANN. art. 38.072; *Chapman*, 150 S.W.3d at 812. Article 38.072 provides that at a trial for certain sexual offenses involving children under the age of fourteen, such a statement is not inadmissible hearsay if other statutory requirements are met. TEX. CODE CRIM. PROC. ANN. art. 38.072. "To invoke the statute, the statements must be more than words that 'give a general allusion' that something in the area of child abuse has occurred." *Bargas v. State*, 252 S.W.3d 876, 894 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (citing *Garcia*, 792 S.W.2d at 91).

The trial court has broad discretion to determine which of several witnesses is an outcry witness. *Chapman v. State*, 150 S.W.3d 809, 812–13 (Tex. App.—Houston

17

[14th Dist.] 2004, pet. ref'd). We will not disturb the trial court's ruling absent a clear abuse of discretion. *Zarco v. State*, 210 S.W.3d 816, 830 (Tex. App.—Houston [14th Dist.] 2006, no pet.).

## B. Incidents in Weslaco

At a hearing outside the jury's presence, the trial court heard testimony from S.M. regarding what A.D.V. told her about what Sanchez did to her. S.M. testified that A.D.V. told her that Sanchez "hurt her" and that A.D.V. stated she felt "dirty." The State asked S.M. if she knew what A.D.V. meant, and S.M. said that she "thought" that A.D.V. meant that Sanchez hurt A.D.V. with his "private thing." S.M. testified that A.D.V. did not provide any details to her concerning the allegations. On cross-examination, S.M. stated that A.D.V. told her that when they were in a hotel in Mexico, Sanchez touched her "privates." S.M. clarified that A.D.V. said that Sanchez touched "her both sides." Regarding what occurred in Weslaco, S.M. testified that A.D.V. told her that Sanchez "touched" her, but A.D.V. did not "tell" S.M. "exactly where." S.M. believed that Sanchez touched A.D.V.'s "private part."

On re-direct examination, S.M. stated that she was confused because A.D.V. had told her of two occurrences. S.M. clarified that A.D.V. provided details to her of what had occurred in Mexico with Sanchez but that the only thing A.D.V. told her regarding what had happened in Weslaco was that Sanchez "touched" her. S.M. said, "She . . . didn't give me details." The State asked, "So she didn't give you any details about what happened in the United States?" S.M. replied, "No, because I didn't ask her." The State asked, "You didn't ask her, but you had asked her questions about the details in Mexico; is that correct?" S.M. said, "Correct." On re-cross examination, Sanchez asked S.M.

18

what she thought A.D.V. meant when she said Sanchez "touched" her, and S.M. said, "Like he was trying to touch her in her private part and all that." However, S.M. clarified that A.D.V. "only said, [Sanchez] touched me." Sanchez asked, "that he touched her privates, touched her hand, touched her head?" S.M. responded, "She didn't tell me."

A.D.V. did not describe the alleged offenses that occurred in Weslaco to S.M., and she did not provide any details to S.M. regarding what she claimed Sanchez did to her in Weslaco. *See Garcia*, 792 S.W.2d at 91. Instead, A.D.V. merely made a general allusion that something in the area of child abuse had occurred in Weslaco when she told S.M. that Sanchez hurt her, made her feel dirty, and touched her. *See id*. Such allusions, in which the complainant does not describe the abuse in a discernible manner, are not within the purview of article 38.072. *Bargas*, 252 S.W.3d at 894 (citing *Garcia*, 792 S.W.2d at 91). Accordingly, the trial court did not abuse its discretion by concluding that S.M. was not the proper outcry witness for the incident occurring in Weslaco. *See id*.

Next, without citation to appropriate authority or substantive argument, Sanchez states that the trial court committed error in allowing Nicanor to testify as the outcry witness regarding A.D.V.'s allegations that Sanchez "touched her butt and her front part" and "put his 'pito' in her front and back private part." *See* TEX. R. APP. P. 38.1(i). We conclude that this complaint is inadequately briefed. *See id*. Moreover, Sanchez appears to premise this argument on the basis that S.M. was the proper outcry witness concerning the incidents in Weslaco. However, as previously stated, S.M. was not the proper outcry witness. Thus, this complaint lacks merit.

## C.    Incident in Mexico

Sanchez next contends that S.M. was the proper outcry witness for the incident

19

occurring in Mexico. Nicanor testified that A.D.V. told her that "the sexual abuse" also happened in Mexico,[7] and Gabriela Fitch, a forensic interviewer, testified without objection that A.D.V. described two incidents—one occurring in Rio Bravo, Mexico and one occurring at her home.

Assuming, without deciding, that S.M. was the proper outcry witness for the incident in Mexico and that it was error for the trial court to allow Nicanor and Fitch to testify concerning the Mexico incident on that basis, we conclude that the error was harmless because the same evidence was admitted, without objection, through A.D.V.'s testimony. *See Chapman*, 150 S.W.3d at 815 (finding the trial court's error in admitting improper outcry testimony was harmless because the evidence was cumulative); *Duncan v. State*, 95 S.W.3d 669, 672 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd) (holding improper admission of outcry testimony was harmless where similar testimony was admitted through complainant, pediatrician, and medical records); *Broderick v. State*, 35 S.W.3d 67, 75 (Tex. App.—Texarkana 2000, pet. ref'd) (concluding that though the trial court erroneously designated an officer as the outcry witness, the error was harmless because the same evidence was introduced through other testimony without objection); *see also Skiba v. State*, No. 13-17-00045-CR, 2018 WL 6626724, at *3 (Tex. App.—Corpus Christi–Edinburg Dec. 19, 2018, pet. ref'd) (mem. op., not designated for publication) (explaining that any error associated with the admission of an improper outcry witness's testimony was harmless because the complainant later testified about the

---

[7] Sanchez did not object to Nicanor's testimony; however, at a pretrial hearing, Sanchez argued that Nicanor was not the proper outcry witness and S.M. was the proper outcry witness. Thus, for purposes of our analysis, we will assume, without deciding, that the issue has been preserved. *See* TEX. R. APP. P. 33.1.

sexual abuse) (citing *Allen v. State*, 436 S.W.3d 815, 822 (Tex. App.—Texarkana 2014, pet. ref'd) (concluding that error in admitting testimony of an improper outcry witness was harmless because the child testified, without objection, to the same facts)).

## D. Other Incidents

Finally, Sanchez complains that: Nieto testified that A.D.V. told her that Sanchez touched her vagina and breasts; Maria Banda, a professional counselor, said that A.D.V. "was a confirmed case of sexual child abuse"; and Katrina Villagomez, a professional counselor, testified that A.D.V. "told her the sexual abuse perpetrator was [Sanchez] and that she was very adamant that the abuse had occurred." The State did not request to designate these witnesses as outcry witnesses; thus, there was no pretrial hearing regarding them, and Sanchez did not object to their testimony on any basis during trial. Therefore, he did not preserve his complaints for appellate review. *See* TEX. R. APP. P. 33.1. Moreover, this evidence is cumulative of the other properly admitted evidence; thus, even assuming error, it was not harmful. *See Dunn v. State*, 125 S.W.3d 610, 615 (Tex. App.—Texarkana 2003, no pet.) ("The cases uniformly hold that the rule is that the improper admission of evidence does not constitute reversible error if the same facts are proved by other properly admitted evidence." (citing *Brooks v. State*, 990 S.W.2d 278, 287 (Tex. Crim. App. 1999))). We overrule Sanchez's fourth issue.

## V. INTERVIEW TAPES

By his fifth issue, Sanchez contends that he was denied his right to due process and a fair trial because "crucial evidence of recorded interviews was destroyed by the State's witness." Sanchez hypothesizes that audio recordings of Nicanor's interview with

A.D.V. could have contained exculpatory evidence and might have helped his defense.

Sanchez's claim involves an allegation that the State failed to preserve or destroyed potentially useful evidence. *See Arizona v. Youngblood*, 488 U.S. 51, 58 (1988). Such an act or omission violates due process only if the State acted in bad faith. *Id.* Thus, to be entitled to a reversal on the basis that the audio recordings were not preserved, Sanchez must show that the State acted in bad faith. *See Chandler v. State*, 278 S.W.3d 70, 75 (Tex. App.—Texarkana 2009, no pet.) (citing *Arizona*, 488 U.S. at 58); *Neal v. State*, 256 S.W.3d 264, 280 (Tex. Crim. App. 2008); *see also Hosey v. State*, No. 13-17-00121-CR, 2018 WL 1755822, at *2 (Tex. App.—Corpus Christi–Edinburg Apr. 12, 2018, no pet.) (mem. op., not designated for publication) ("[T]he failure to preserve potentially useful evidence is not a denial of due process unless a criminal defendant can show bad faith" a standard which "is properly applied to cases in which the government no longer possesses the disputed evidence."). "Bad faith entails some sort of improper motive, such as personal animus against the defendant or a desire to prevent the defendant from obtaining evidence that might be useful." *Ex parte Napper*, 322 S.W.3d 202, 238 (Tex. Crim. App. 2010).

Here, the only evidence before the trial court shows that Nicanor could not locate the audio recordings of the interviews and that her old computer had been "wiped out" when it was returned to the manufacturer which was done with all older computers by her agency because she was provided a new computer. Thus, there is no evidence that the State had some sort of improper motive, such as personal animus against Sanchez or a desire to prevent Sanchez from obtaining the audio recordings. *See id*.; *Rodriguez v. State*, 491 S.W.3d 18, 31 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd) ("[T]he mere

fact that the video was not preserved does not show that the State acted in bad faith."). Accordingly, we cannot conclude that the State acted in bad faith or that Sanchez's due process rights were violated in this case. *See Rodriguez*, 491 S.W.3d at 31 (determining that the State did not act in bad faith when a video of a shooting had been tagged into evidence, but it was later discovered that the "video had not properly copied to the drive and the drive was actually blank"); *Burdick v. State*, 474 S.W.3d 17, 27 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (explaining that there was no evidence that the State acted in bad faith when the record established that jail videos had been "lost because they were taped over after seventeen days"); *Chandler*, 278 S.W.3d at 76 (finding no bad faith when a video of a prison riot was not preserved because prison policy required for the tape to be overridden in fourteen days); *see also Hosey*, 2018 WL 1755822, at *3 (concluding that there was no bad faith when the State represented that footage on a video was deleted after nine days because the jail's surveillance system recycled its videos). We overrule Sanchez's fifth issue.

## VI.    CUMULATIVE ERROR

By his sixth issue, Sanchez contends that there was cumulative error. Specifically, in one sentence, Sanchez argues that "the aggregate effect of the cumulative errors by the trial court, argued supra in POINTS OF ERROR 1-6, adversely affected his sacred right to a fair and impartial trial."

Under the cumulative error doctrine, multiple harmless errors can, in the aggregate, constitute reversible error. *Gamboa v. State*, 296 S.W.3d 574, 585 (Tex. Crim. App. 2009). "The cumulative error doctrine provides relief only when constitutional errors so 'fatally infect the trial' that they violated the trial's 'fundamental fairness.'" *United States*

23

*v. Bell*, 367 F.3d 452, 471 (5th Cir. 2004) (quoting *Derden v. McNeel*, 978 F.2d 1453, 1457 (5th Cir. 1992) (en banc)).

Here, we have not found such errors. *See id.* Thus, Sanchez has not shown that the cumulative error doctrine applies. *See id.*; *Gamboa*, 296 S.W.3d at 585. We overrule Sanchez's sixth issue.

## VII. CONCLUSION

We affirm the trial court's judgment.

JAIME TIJERINA,
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed this
10th day of October, 2019.